UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELANIE R. TRACY,

                Plaintiff,                   Case No. 2:16-cv-12052
                                       District Judge Sean F. Cox
v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/

## RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 13) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 10)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 13), **DENY** Plaintiff's motion for summary judgment (DE 10), and

**AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Melanie R. Tracy, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for social security disability insurance

benefits ("DIB").  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

10), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 13), and the administrative record (DE 8).

## A.    Background

On July 23, 2013, Plaintiff filed an initial application for DIB, alleging she has been disabled since June 1, 2010.  (R. at 118-19.)   Her application was denied and she sought a *de novo* hearing before an administrative law judge ("ALJ").  On December 9, 2014, ALJ William Callahan issued an opinion in which he found Plaintiff to not be disabled.  (R. at 10-23.)  The Appeals Council denied Plaintiff's request for review on April 30, 2016.  (R. at 1-3.)  ALJ Callahan's decision thus became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

## B.    Plaintiff's Medical History and Hearing Testimony

Plaintiff has an extensive medical history, involving severe left foot pain requiring a surgery to remove the fat pad on her left heel.  At the time of the hearing, she was on pain medications including Restoril, Tramadol, Norco, Percocet, and Oxycodone.  (R. at 46.)  She also uses a cane to walk because, according to Plaintiff, her knee is unable to bear her weight and she "pigeon-toe[s]" her left foot, making walking difficult.   (R. at 47.)    She testified that she ices her foot five to six times per day for pain relief and to prevent swelling.  (R. at

48, 51.)  Her medical history will be discussed in relevant part as necessary in the Analysis section below.

### C.    Vocational Expert Testimony

Michael Roscoe testified at the hearing as a Vocational Expert ("VE").  (R. at 61-66.)  The ALJ asked the VE several hypothetical questions to assess whether an individual with Plaintiff's age, education, and past work could perform jobs in the national economy with specific limitations.  He limited Plaintiff to the sedentary exertional level, with a lifting capability of 10 pounds frequently and 15 pounds occasionally.  (R. at 56-57.)  He further limited the individual to jobs that "permit elevation of the left leg to waist-height and icing of the left foot 15 minutes in the morning and 15 minutes in the afternoon," and that would permit the use of a cane to stand.  (R. at 60.)  The VE concluded that the hypothetical individual would be able to perform jobs in the security field, including lobby attendant, gate attendant, and security monitor, with 800 jobs statewide and 25,000 nationally.  (R. at 57 and 60.)

### D.    The Administrative Decision

In his January 21, 2015 decision, the ALJ first concluded that Plaintiff met the insured status requirements through March 31, 2014.  (R. at 12.)  At **Step 1** of

the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in

substantial gainful activity since June 1, 2010.  (Id.)

At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments:  lumbar degenerative disc disease, neuritic pain and chronic spasms

in the left foot status post excision of heel spur with plantar fasciotomy, mild

trochanteric bursitis in the left hip, and minimal joint effusion in the left knee.  (R.

at 12.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically

considering Listings 1.02 and 1.04.  (R. at 13.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin
v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential
review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet
     or equal the criteria of an impairment set forth in the Commissioner's
     Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the
     claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and
     residual functional capacity, can the claimant perform other work
     available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Prior to undertaking Step 4, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that she could perform sedentary work,[3] with the following limitations:

> [S]he requires the ability to alternate between sitting and standing throughout the day.  More specifically, at one time, she is able to stand and walk for twenty minutes and sit for two hours.  With regard to lifting, she can occasionally lift fifteen pounds and frequently lift ten pounds.  When walking, she must be able to use a cane, which she carries in her right dominant hand.  Further, she can occasionally bend, stoop, and crouch, but must avoid squatting, kneeling, crawling, and climbing ladders, ropes or scaffolds.  She should not have exposure to hazards such as unprotected heights or fast-moving machinery, but can occasionally operate a motor vehicle.  She has no limitations with regard to manipulative functions.  She can frequently use foot controls with her right foot, but never operate foot controls with her left foot.  Lastly, she may miss about one day of work per month.

(R. at 13-14.)

At **Step 4**, the ALJ concluded that Plaintiff was unable to perform her past relevant work.  (R. at 21.)  At **Step 5**, the ALJ concluded that Plaintiff was capable

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §404.1567(a).

of performing other jobs that exist in significant numbers in the national economy. (R. at 21-22.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 22.)

### D.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

6

to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**E.  Analysis**

7

Plaintiff advances four arguments as to why the ALJ committed reversible error warranting remand.  First, she asserts that the ALJ failed to properly consider her need to elevate and ice her foot several times per day.  Second, she contends that the ALJ erred in his weighing of opinion evidence.  Third, Plaintiff disputes the ALJ's credibility finding with respect to her complaints of pain.  Finally, she argues that the RFC is not supported by substantial evidence.

The Commissioner opposes the motion, asserting that the ALJ's decision is supported by substantial evidence.  I will address each argument in turn.

### 1.    Elevation and Icing of Plaintiff's Foot

Plaintiff first argues that none of the jobs identified by the VE allowed for the employee to elevate a lower extremity or apply ice, except during breaks and lunch time.  She points out that per the October 13, 2013 instructions of her treating physician, Dr. Kissel, she is required to ice her foot for pain relief, but being off task for an additional 15 minutes per day in order to do so would be work preclusive.  Specifically, Dr. Kissel stated in relevant part:

> Because of the severity of her pain [Plaintiff] is required to elevate and ice her foot during the day as much as possible to help alleviate her symptoms.  She is unable to stand on the foot for prolonged periods of time and must do daily elevation and icing.

(R. at 359.)  In December 2014, Dr. Kissel reiterated that Plaintiff "must ice and elevate [her foot] daily" for pain management.  (R. at 387.)

As addressed below, the ALJ properly discounted Dr. Kissel's opinion. Nevertheless, even if he had adopted the opinion in its entirety, the ALJ fully considered and accounted for Plaintiff's need to elevate and ice her foot throughout the day because there is nothing inconsistent with this requirement in the RFC. Specifically, the RFC limits Plaintiff to standing for only twenty minutes and sitting for two hours, indicating that she will not be standing on her foot for prolonged periods of time.  In addition, the ALJ explicitly asked the VE whether the jobs proposed would "permit elevation of the left leg to waist-height and icing of the left foot 15 minutes in the morning and 15 minutes in the afternoon on break times."  (R. at 58.) The VE answered that "during break times, elevation of the foot to waist-height would be allowable."  (Id.)  The icing and elevation would only be work preclusive if they caused Plaintiff to be off-task for longer than her assigned lunch and break times.  There is nothing in Dr. Kissel's opinion that would not allow for icing and elevation three times per day during an eight hour workday: during her fifteen minute breaks and her lunch break.  Moreover, if Plaintiff ices her foot once in the morning before heading into work, three times while at work, and one or two times in the evening after work, this would be consistent with Plaintiff's testimony that she typically needs to ice it five or six times per day. (R. at 51.)  As such, there is no error in the ALJ's conclusions that Plaintiff's need to ice and elevate her leg would not be work preclusive.

9

## 2.   Weighing of Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(b).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  Administrative law judges "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . .[,]" but "are not required to adopt any prior administrative medical findings[.]"  20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

10

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[4] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion,"  20 C.F.R. § 416.927(c)(2), and   "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

---

[4] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010).  In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-805 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir.2006) (quoting *Wilson*, 378 F.3d at 547).  *See also, Betty v. Comm'r of Soc. Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

For the reasons stated below, I find that the ALJ's opinion gives good reasons for discounting the medical opinions at issue and that the Commissioner has met the goal of § 1527(c). *Francis*, 414 F.App'x at 805 (quoting *Wilson,* 378 F.3d at 547). I also find that the opinion "'permits the claimant and [this] reviewing court a clear understanding of the reasons for the weight given [to the] treating physician's opinion[.]'" *Francis,* 414 F.App'x at 805 (quoting *Friend*, 375 F.App'x at 550).

The ALJ assigned "little weight" to Dr. Kissel's above mentioned October 2013 and December 2014 letters stating that Plaintiff must ice and elevate her left

foot as much as possible, and to his October 8, 2012 Medical Needs Assessment ("MNA") stating that she would be unable to work until November 24, 2012. (R. at 16 and 18.) The ALJ discounted the opinions for several reasons, which are supported by substantial evidence.

As to the October 8, 2012 MNA, the ALJ explained that the opinion that Plaintiff was unable to work was inconsistent with Dr. Kissel's treatment notes, in which she was noted as doing well post-operatively and was "significantly better" on August 8, 2012 (R. at 310.) The ALJ also pointed out that Dr. Kissell had not imposed *any* functional limitations on Plaintiff elsewhere in his treatment notes. Inconsistency with his or her own treatment notes is a sufficient reason for rejecting the opinion of a treating physician. *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that the ALJ "reasonably discounted [the treating physician's] medical opinion" where "the proposed limitations were inconsistent with his own treatment notes . . . .").

The ALJ likewise discounted the October 2013 and December 2014 letters discussed above by noting that Plaintiff's last appointment with Dr. Kissel occurred in June 2013, well before both of the letters were issued. At that last appointment, Plaintiff indicated that her foot pain continued, but that Lyrica provided "some relief," thereby making his conclusions somewhat inconsistent with his own treatment notes. (R. at 309.) The ALJ also pointed out

14

inconsistencies with the record as a whole, including the opinion of Dr. Rudraraju, who indicated that Plaintiff was doing well on a conservative treatment plan.  (R. at 18.); *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) (concluding that the ALJ properly rejected a treating physician opinion that was not supported by objective medical evidence); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (the ALJ is "not bound by conclusory statements of doctor, particularly where they are unsupported by detailed objective criteria and documentation.") (internal quotation omitted); *White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 286 (6th Cir. 2009) (an ALJ's finding that a medical opinion conflicts with other evidence in the record is sufficient to discount the opinion.). Accordingly, the ALJ gave good reasons for assigning little weight to Dr. Kissel's opinions.

### 3.    Assessment of Plaintiff's Pain

Plaintiff asserts that the ALJ erred by making reference to the fact that she did not seek out pain management, despite being urged to do so by several treating physicians; however, the ALJ accurately summarized the fact that Plaintiff was told to seek out pain management multiple times before she sought care with Dr. Edmond, a physiatrist, in September 2013.  (R. at 15, 16, 17, and 18.)  Further, the ALJ acknowledged Plaintiff's reports of pain, but also accurately noted that she was helped by her medications.  (R. at 18, 309, and 369.)  He accounted for her

reports of foot pain by limiting her to sedentary work, allowing for the use of her cane when standing and walking, and limiting her to a minimum amount of standing and walking in an eight hour workday.  (R. at 13-14.)  As such, Plaintiff has not shown that she is more limited because of pain than that assessed in her RFC, as supported by substantial evidence.

### 4.     Plaintiff's RFC

Finally, Plaintiff asserts that the ALJ erred in his RFC assessment because he specified that she is able to lift 15 pounds occasionally, which is outside the parameters of sedentary work.  Plaintiff is correct that sedentary work "involves lifting no more than 10 pounds at a time." 20 C.F.R. § 404.1567(a).  Here, the ALJ's hypothetical to the VE included this exact limitation to sedentary *with the exception* that the individual could lift fifteen pounds occasionally.  (R. at 56.); *Green v. Comm'r of Soc. Sec.*, No. 16-10093, 2016 WL 792149, at *9 (E.D. Mich. Dec. 21, 2016) *report and recommendation adopted* 2017 WL 282175 (E.D. Mich. Jan. 23, 2017) (affirming the ALJ's RFC of sedentary with the ability to lift and carry 15 pounds).

The ALJ based his conclusion that Plaintiff could lift fifteen pounds occasionally on the opinion of Dr. Ronald Kendrick, who made this finding after a review of the entire record.  (R. at 362.)  Although there is other evidence in the record potentially indicating that Plaintiff is limited to lifting ten pounds, this Court

may not re-weigh that evidence and must "defer to an agency's decision even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Foster v. Halter*, 297 F.3d 348, 353 (6th Cir. 2001). Here, substantial evidence supports the ALJ's conclusion.

Plaintiff also asserts that the ALJ erred in finding that Plaintiff had no limitations in manipulative functions, despite the fact that she uses a cane while walking. Plaintiff points to Social Security Ruling 96-9p, which provides that "most unskilled sedentary jobs require good use of both hands and fingers," which she argues is difficult when using a cane with her dominant hand. However, there is nothing in the record to indicate that Plaintiff is limited in this way. Instead, there is evidence that Plaintiff is able to open a jar, button, write, tie shoes, and pick up a coin. (R. at 354.) In addition, none of her treating physicians identified any manipulative limitations.

Moreover, the VE testified that, even with the use of a cane in her dominant hand when standing, there are still jobs in the national economy that Plaintiff can perform, specifically, the security jobs, with 800 jobs statewide and 25,000 jobs nationwide. (R. at 57 and 60.) Based on the foregoing, the ALJ's conclusion that Plaintiff did not have manipulative limitations is supported by substantial evidence.

## F. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits to Plaintiff. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 19), **GRANT** Defendant's motion for summary judgment (DE 23), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 25, 2017          s/Anthony P. Patti
                              Anthony P. Patti
                              UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on July 25, 2017, electronically and/or by U.S. Mail.

                              s/Michael Williams
                              Case Manager for the
                              Honorable Anthony P. Patti

19